Filed 9/19/14  P. v. Mitchell CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B251620 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA127004) |
| v. | |
| STEVEN MITCHELL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. John A. Torribio, Judge.  Affirmed.

Jessica Coffin Butterick, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

Defendant Steven Mitchell appeals from the judgment entered following a jury trial which resulted in his conviction of two counts of first degree robbery, two counts of assault with a firearm and criminal threats. Based on our independent review of the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436, 441 (*Wende*), we affirm both convictions.

## FACTUAL AND PROCEDURAL HISTORY

Viewed in accordance with the usual rules on appeal (*People v. Zamudio* (2008) 43 Cal.4th 327, 357-358 (*Zamudio*)), the evidence established that two armed men wearing ski masks broke through the locked screen door of a home on the 9000 block of Main Street in the City of Bellflower on October 12, 2012. One of the residents was in the bathroom with her cell phone when the break-in occurred and was able to call 911. Before the police arrived, a third masked man entered, forced the victims onto the ground and duck taped their arms behind their backs. Not long after the three men left the house, defendant and Jones were discovered hiding in nearby bushes. One of the two victims identified them as the intruders in a field identification.

Defendant and Jones were jointly charged by second amended information with two counts of first degree robbery (§ 211) (counts 1 and 4); two counts of assault with a semiautomatic firearm (§ 245, subd. (b)) (counts 2 and 5); and criminal threats (§ 422, subd. (a)) (count 3); enhancements for personal firearm use were also alleged (§§ 12022.5, subds. (a) & (d); 12022.53, subd. (b)).[1]

On March 28 and July 15, 2013, defendant's two *Marsden* motions were denied. On August 15, 2013, the trial court ordered a joint trial with separate juries for defendant and Jones.

Defendant's motions to exclude a gun found in the bushes and to suppress his custodial statements to police were heard on August 19 and 20, 2013. The trial court

---

[1] In a separate appeal, Jones, who was self-represented at trial but was appointed appellate counsel, challenges the trial court's denial of his motion for advisory counsel (case No. B253050)

listened to a tape recording of the interview in which an officer can be heard advising defendant of his *Miranda* rights. Defendant identified his voice on the recording, but maintained he did not understand that he had a right not to answer the officers' questions. The officer testified that defendant nodded his head each time he was asked whether he understood his rights. The trial court denied both motions.

The home's three occupants (Lisa V., her daughter Alma, and Alma's boyfriend George A.) testified. Alma, who remained locked in the bathroom during the entire robbery, recalled hearing the screen door slam and then Lisa say, "Please don't hurt us. Take whatever you want and leave us alone." She heard men threaten to kill the dog if it did not stop barking, mention a gun and say, "Get on the ground."

Lisa recalled that moments after Alma went into the bathroom, the automatic light on the porch went on and the dog started barking. Defendant, wearing a ski mask, peered in through the closed screen door. A moment later, Jones, who also wore a ski mask, broke through the screen door, followed immediately by defendant. Jones, the taller and thinner of the two men, was wearing a gray hoodie and there was something metal in the eye area of his ski mask. Defendant was wearing a white t-shirt under his black hoodie. Through the holes in the ski masks, Lisa could see both men's eye areas. Both men were holding guns. While Jones told George to get on his knees, defendant held a black and silver gun to Lisa's head and said, "This is a real gun. I will use it. Don't do anything. Don't say anything." During the course of the ensuing robbery, defendant repeated similar words multiple times; he seemed nervous and was shaking, but Lisa could not recall whether he stuttered. Lisa asked the intruders not to hurt anyone. She took $116 from her wallet and handed it to defendant, who put the money in his pocket. While defendant held Lisa and George in the living room at gun point, Jones tried to open the locked bathroom door. Lisa said her daughter was inside but she did not have a phone with her; Lisa pointed to her own cell phone on the coffee table and said it was her daughter's cell phone. Defendant put the phone in his pocket. Jones went into the bedrooms where Lisa could hear him opening drawers. Lisa saw a black and gray backpack in the hallway, into which Jones put things he was taking. Meanwhile, a third

3

man wearing a black and white scarf tied around his face entered the house. When Lisa asked him not to hurt them, he said, "Shut the fuck up white people. Your people kill my people all of the time, and I'll have no problem killing you tonight." And when George did not comply quickly enough with instructions to lie down, the third man kicked George in the ribs, then duck taped George's hands behind his back. As instructed, Lisa laid face down on the ground next to George. While the third man was duck taping Lisa's arms behind her back, one of the intruders said, "Let's roll. Let's go. We got money. We have jewelry." The third man stopped taping Lisa's arms and all three left through the front door. Jones was holding the back pack. A moment later, the third man rushed back into the house, through the kitchen and out the back door. When she was confident the robbers were gone, Lisa ran to the front door and yelled to the police that one of the robbers had gone out the back door. Lisa saw that her jewelry was missing from a jewelry box on the dresser. A little while later, officers brought a scarf, some jewelry and currency back to the house. Lisa identified the scarf as the one the third man had been wearing. The jewelry was hers and the currency was the amount she had handed to defendant. Lisa identified defendant and Jones at a field show up later that night. The back pack she saw Jones holding during the robbery was on the hood of a patrol car. At trial, Lisa recognized Jones's voice as that of the robber who told George to get on the floor.

George's recollection of events was similar to Lisa's except he did not hear either man threaten Lisa. George recognized the guns as semiautomatics. George's cell phone and about $400 that had been on the nightstand were taken in the robbery. George was unable to identify defendant or Jones in the field show-up that night. He recognized a backpack as the one the robbers had used; inside of that backpack, George saw a knife and a black ski mask like the one the robbers had been wearing. His cell phone and money were returned to him that night.

Police entering the house immediately after the robbery found a loaded magazine on the kitchen floor; a scarf and roll of duck tape were found in the backyard.[2] Defendant and Jones were discovered hiding in the bushes of a house on the 9000 block of Olive Street (the street behind Main Street). Jones was wearing a black ski mask with wire between the eye holes rolled up as a beanie, a black scarf and a backpack which contained, among other things, burglary tools and Lisa's stolen jewelry. A second ski mask was found in the bushes the next day. Defendant and Jones were wearing empty gun holsters. Defendant told an officer that he lost his gun while running. Two loaded semiautomatic handguns were found in the bushes; one of which was later determined to be registered to defendant. Police found a cell phone, $116 in currency, a loaded 9mm magazine, a handcuff key and a pair of latex gloves in defendant's pockets. Police returned the stolen cell phones, currency and jewelry to the victims.

Outside the presence of the Jones jury, Detective Kasey Woodruff testified that he interviewed defendant at the police station that same night. Defendant admitted participating in the robbery and that he had a gun, but would not identify his cohorts. A recording of the interview was played for the jury. Jones tried to call defendant as a witness for the defense, but the trial court would not allow him to do so. Defendant moved for a mistrial, arguing that his fifth amendment right was infringed upon by the fact that Jones called him as a witness. The trial court denied the motion. Because defendant's recorded admission was introduced only against him, the jury's were separately instructed and closing arguments were presented to each jury separately.

Defendant was convicted on all counts and the enhancements were found true. He was sentenced to a total of 13 years in prison, comprised of the 3 year low term for first degree robbery, plus a consecutive 10 years for the personal use of a firearm (§§ 213, subd. (a)(1), 12022.53, subd. (b)) on count 1. An identical concurrent term was imposed on the second robbery count (count 4). Sentence on the remaining counts was imposed by stayed pursuant to section 654. Defendant timely appealed.

---

[2] The scarf was sent for DNA testing, but there were no results available at the time of trial.

We appointed separate counsel to represent defendant on appeal.  After examination of the record, appointed counsel filed an opening brief which contained an acknowledgment that she had been unable to find any arguable issues and requesting that we independently review the record pursuant to *Wende, supra*, 25 Cal.3d 436.  We advised defendant that he had 30 days within which to personally submit any contentions or issues which he wished us to consider.  Defendant did not respond.

We have examined the entire record and are satisfied that appointed counsel fully complied with her responsibilities and that no arguable issues exist.  (*Wende, supra*, 25 Cal.3d at p. 441.)

## DISPOSITION

The judgment is affirmed.


RUBIN, J.

WE CONCUR:



BIGELOW, P. J.



FLIER, J.


6